```
                  UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF INDIANA
                       HAMMOND DIVISION

UNITED STATES OF AMERICA,       )
                                )
           Plaintiff            )
                                )
RICHARD J. HUCKER,              )
                                )
     Intervening Plaintiff      )
                                )
           v.                   )   Case No. 2:04 cv 415
                                )
LAKE COUNTY BOARD OF            )
COMMISSIONERS; and LAKE COUNTY  )
REDEVELOPMENT COMMISSION,       )
                                )
           Defendants           )
```

OPINION AND ORDER

This matter is before the court on the Motion to Compel Testimony filed by the plaintiff, the United States of America, on August 25, 2005, and the Motion to Compel Testimony filed by the United States on August 30, 2005.  For the reasons set forth below, the first Motion to Compel is **DENIED AS MOOT**, and the second Motion to Compel is **GRANTED**.

Background

This Fair Housing Act case alleges that the defendants, the Lake County Board of Commissioners (LCBC) and the Lake County Redevelopment Commission (LCRC), unlawfully discharged Charles McInturf and Richard Hucker because of their efforts in bringing an affordable housing development into Lake Station, Indiana, and denied zoning permission for the development for racial reasons.

On July 18, 2005, the United States began the deposition of County Commissioner Rudy Clay.  During the deposition, counsel

for the defendants objected to certain questions and instructed Clay not to answer under the deliberative process and mental process privileges.  Defense counsel instructed Lake County Economic Development Department Executive Director, Milan Grozdanich, not to answer similar questions during her deposition on August 11, 2005.  The parties have suspended further depositions until the applicability of these privileges is resolved.

Specifically, the plaintiff seeks to depose the defendants concerning:

1. Their understanding of their powers and responsibilities pursuant to all applicable laws, and how they interpret those powers and responsibilities in carrying out their duties;

2. The substance of all discussions between them concerning all decisions and actions that led to the termination of complainants Richard Hucker and Charles McInturf; and

3. Their motivations in taking each of those actions.

(Second Motion to Compel, p. 2)

Although the arguments raised by the defendants are substantially the same, the defendants have filed separate response briefs to the motions to compel.  The court will consider the arguments raised by both defendants in their briefs.

## Discussion

### I.  First Motion to Compel

The first motion to compel is the same as the second motion to compel except that it did not include the exhibits attached to

the second motion.  Because the second motion is more complete in this respect, the court denies the first motion as moot and rules on the second motion as set forth below.

## II.  Second Motion to Compel

The "deliberative process" is a federal common law privilege that "protects communications that are part of the decision-making process of a governmental agency."[1]  *United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993); *Anderson v. Marion County Sheriff's Department*, 220 F.R.D. 555, 560 (S.D. Ind. 2004).  *See also Department of the Interior v. Klamath Water Users Protective Association*, 532 U.S. 1, 8, 121 S.Ct. 1060, 1065-66, 149 L.Ed.2d 87 (2001) (explaining the rationale behind the privilege).  In order for the privilege to apply, the communication must be (1) pre-decisional and (2) deliberative.  *See Anderson*, 220 F.R.D. at 560 (*quoting Becker v. Internal Revenue Service*, 34 F.3d 398, 403 (7th Cir. 1994)).  The Seventh Circuit recently adopted the definitions of these terms set forth by the Circuit Court of Appeals for the District of Columbia.  *See Enviro Tech International, Inc. v. United States Environmental Protection Agency*, 371 F.3d 370, 375 (7th Cir. 2004) (*quoting Jordan v. United States Department of Justice*, 591 F.2d 753, 774 (D.C. Cir. 1978)).  According to the Seventh Circuit, the communication must be "predecisional in the sense that it is actually

---

[1] Courts disagree on whether this privilege also is available to state and local officials.  *See Jones v. City of Indianapolis*, 216 F.R.D. 440, 450 (S.D. Ind. 2003).  Resolution of this issue is not necessary for the disposition of this motion.

3

antecedent to the adoption of an agency policy, and deliberative in the sense that it is actually related to the process by which policies are formulated."  (internal quotation and alteration omitted).  The party asserting the privilege bears the burden of establishing "both its existence and applicability" at this first step.  *Allen v. Chicago Transit Authority*, 198 F.R.D. 495, 501 (N.D. Ill. 2001).

A number of courts have held that the deliberative process privilege is vitiated entirely at step one when the government's decisionmaking process is central to the plaintiff's case.  *See In re Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency*, 145 F.3d 1422, 1424 (D.C. Cir. 1998); *Anderson*, 220 F.R.D. at 560-61; *Scott v. Board of Education of the City of East Orange*, 219 F.R.D. 333, 337-38 (D.N.J. 2004); *Anderson v. Cornejo*, No. 97 C 7556, 2001 WL 826878, at *2 (N.D. Ill. July 20, 2001) (collecting cases).  Two interrelated principles justify this result.  First, the privilege should be limited only to those "communications designed to directly contribute to the formulation of *important public policy*."  *Anderson*, 220 F.R.D. at 560-61 (*quoting Soto v. City of Concord*, 162 F.R.D. 603, 612 (N.D. Cal. 1995)); *Accord, Jordan*, 591 F.2d at 774.  Thus, an extension of privilege "to a particular personnel matter extends it beyond its present form to protect from disclosure what would otherwise be evidence relevant to plaintiff's complaint for discrimination."  *Anderson*, 220 F.R.D. at 561 (*quoting Waters v. United States Capitol Police Board*, 216 F.R.D. 153, 163

4

(D.D.C. 2003)).  Second, the privilege is intended to prevent inquiry into governmental decisionmaking that is only collateral to the case.  *See* *In re Subpoena*, 145 F.3d at 1424.  However, "if either the Constitution or a statute makes the nature of the governmental officials' deliberations the issue, the privilege is a nonsequitor."  *In re Subpoena*, 145 F.3d at 1424 ("If Congress creates a cause of action that deliberatively exposes government decisionmaking to the light, the privilege's raison d'e tre evaporates."); *Scott*, 219 F.R.D. at 337 ("[R]outine operating decisions cannot be transformed into policy formulation at the higher levels of government simply because they are made at public institutions.") (quotation and citation omitted).  Thus, the deliberative process privilege simply does not apply in civil rights cases in which the defendant's intent to discriminate is at issue.  *See* *In re Subpoena*, 145 F.3d at 1424; *Anderson*, 220 F.R.D. at 560-61; *Scott*, 219 F.R.D. at 337-38.

     Assuming that the deliberative process privilege is applicable and can be established, the privilege nonetheless "may be overcome where there is sufficient showing of a particularized need to outweigh the reasons for confidentiality."  *Farley*, 11 F.3d at 1389.  At this second step, the court must balance the parties' interests, "taking into account factors such as the relevance of the evidence, the availability of other evidence, the seriousness of the litigation, the role of the government, and the possibility of future timidity by government employees."  *In re Sealed Case*, 121 F.3d 729, 737-38 (D.C. Cir. 1997) (inter-

5

nal quotations omitted). This determination must be made on a "case-by-case, ad hoc basis." *In Re Sealed Case*, 121 F.3d at 737.

Nevertheless, the deliberative process privilege yields "when government misconduct is the focus of the lawsuit." *Tri-State Hospital Supply Corporation v. United States*, 226 F.R.D. 118, 134-35 (D.D.C. 2005). Although some courts seem to treat the governmental misconduct exception as part of the step two balancing test, *see, e.g., Anderson*, 2001 WL 826878, at *2 (collecting cases); *Artfield Builders v. Village of Buffalo Grove*, No. 92 C 0284, 1992 WL 314185, at *2 (N.D. Ill. 1992), the dominant view is that the exception is simply a restatement of the principle that the deliberative process privilege does not apply when the government's intent is at issue. *See, e.g., Tri-State Hospital*, 226 F.R.D. at 134-35 ("Under the government misconduct exception, there is no need to engage in a balancing test because the privilege does not apply at all."); *Alexander v. Federal Bureau of Investigation*, 186 F.R.D. 154, 163-65 (D.D.C. 1999) (rejecting the government's contention that misconduct merely is a factor); *In re Sealed Case*, 121 F.3d at 746 ("Moreover, the privilege disappears altogether when there is any reason to believe government misconduct occurred."). If a party can produce "some evidence," including circumstantial evidence, that the government had improper motivations, the government misconduct exception allows the party to conduct discovery on the question of intent. *Alexander*, 186 F.R.D. at 165.

6

Few courts have addressed the mental processes privilege which protects the "uncommunicated motivations for a policy or decision."  *See* ***North Pacifica, LLC v. City of Pacifica***, 274 F.Supp.2d 1118, 1122 (N.D. Cal. 2003) (distinguishing this privilege from the deliberative process privilege which protects communication).  However, those courts consistently have determined that the "mental process privilege is 'inextricably intertwined' with the deliberative process privilege." ***United States v. Denlinger***, No. S86-51, 1989 WL 516267, at *5 (N.D. Ind. 1989) (*quoting* ***Carl Zeiss Stiftung v. V.E.B., Carl Zeiss, Jena***, 40 F.R.D. 318, 326 (D.D.C. 1966)).  *See also* ***North Pacifica***, 274 F.Supp.2d at 1122.  The mental processes privilege appears only to apply when the official decision is legislative or adjudicative in nature.  *See, e.g.,* ***North Pacifica***, 274 F.Supp.2d at 1112 (noting that the privilege "has been applied in both the adjudicative and legislative context"); ***Newport Pacific, Inc. v. County of San Diego***, 200 F.R.D. 628, 639 (S.D. Cal. 2001) (declining to apply the mental processes privilege because "the Board was not creating legislation," but rather was voting to approve a land use permit, and thus the privilege was irrelevant); ***United States v. Hooker Chemicals & Plastics Corporation***, 123 F.R.D. 3 (W.D.N.Y. 1988); ***Gulf v. Schlesinger***, No. H-79-195, 1979 WL 1004 (W.D. Tex. Jan. 29, 1979).  However, where the mental processes privilege is available, the analysis is the same as that for the deliberative processes privilege.  *See* ***North Pacifica***, 274 F.Supp.2d at 1123.  It, too, is unavailable when the defendant's

7

intent is critical to the plaintiff's case. *See* **United States v. Wal-Mart Stores**, No. Civ.A. PJM-01-CV-152, 2002 WL 562301, at *4 (D. Md. Mar. 29, 2002) (noting that even in the context of an executive decision, "where a prima facie case of misconduct is shown, justice requires that the mental process rule be held inapplicable.").

The defendants first argue that because the United States has asserted the deliberative process privilege, the defendants can too. (LCRC Brief, pp. 2-5) However, the privilege is not exercised on a *quid pro quo* basis nor is the conduct of the party opposing the privilege relevant to its applicability. Therefore, this argument is misplaced.

In addition, the bulk of the defendants' briefs is spent on the merits of the case itself. The defendants will have the opportunity to present these arguments to the District Court when motions for summary judgment are filed. For purposes of this motion to compel, the only substantive issue is whether the plaintiff must establish intent as part of its *prima facie* case of discrimination under Section 3617 of the Fair Housing Act. Fortunately, the Seventh Circuit recently clarified that "intentional discrimination is an essential element of a ß3617 claim." **East-Miller v. Lake County Highway Department**, 421 F.3d 558, 563 (7th Cir. 2005). Accordingly, this court need not address any substantive issue to resolve this discovery dispute.

The court cannot see how the first type of information the plaintiff seeks from the deponents - their "understanding of

8

their powers and responsibilities pursuant to all applicable laws, and how they interpret those powers and responsibilities in carrying out their duties," is protected by any privilege at all, let alone the deliberative process or mental process privilege. This line of questioning simply seeks information on how an individual public official interprets the laws which govern his decision-making process rather than the information on the thoughts and discussions leading to the promulgation of policy. As such, it is neither pre-decisional, deliberative, nor related to a particular policy. *See* **Anderson**, 220 F.R.D. at 560-61.

In addition, inquiry into the deponents' understanding of the laws governing their work does not improperly seek legal opinions from nonlawyers. Rather, these interpretations are one way in which a party may establish the defendant's intent by circumstantial evidence. *See* **Stewart B. McKinney Foundation, Inc. v. Town Plan and Zoning Commission of the Town of Fairfield**, 790 F.Supp. 1197, 1212-13 (D. Conn. 1992) (finding that "the Commission's interpretation of the Regulations was unreasonable and, therefore, the Commission's stated reasons for its decision were pretextual"). Therefore, the plaintiff is entitled to make this inquiry.

With respect to the second and third types of information sought by the plaintiff - the substance of discussions between the deponents, as well as their motivations, in decisions and actions leading to the termination of Hucker and McInturf - the court doubts that the deliberative process and mental process

privileges ever were intended to prohibit inquiry into routine personnel decisions.  *See* ***Jordan***, 591 F.2d at 774; ***Scott***, 219 F.R.D. at 337; ***Anderson***, 220 F.R.D. at 560-61.  Regardless, the privileges do not apply here because the plaintiff's case rests on the deponents' decisionmaking process itself.  *See, e.g.,* ***In re Subpoena,*** 145 F.3d at 1424.  Although the LCBC attempts to limit this rule to Section 1983 and Title VII cases, courts have applied it to a full range of civil rights litigation, including the Fair Housing Act.  *See, e.g.,* ***Anderson***, 220 F.R.D. at 560 (collecting cases applying the rule in a civil rights context generally); ***Artfield Builders***, 1992 WL 314185 at *2-3 (noting that the deliberative process privilege can be overcome in Fair Housing Act litigation).

Moreover, at least two Circuit Courts of Appeals have recognized that decisionmakers' thoughts and unrecorded deliberations are appropriate forms of discoverable evidence in cases such as this one.  *See* ***Regional Economic Community Action Program, Inc. v. City of Middletown***, 294 F.3d 35, 49-53 (2nd Cir. 2002) (recounting the thoughts and mental impressions of Planning Board members, as well as deposition testimony regarding the members' thoughts leading to decision at issue in a case brought under the Fair Housing Act, Americans with Disabilities Act, and Rehabilitation Act); ***Smith & Lee Associates, Inc. v. City of Taylor, Michigan***, 13 F.3d 920, 928-29 (6th Cir. 1993) (considering deposition testimony regarding the reasons City Council members did not vote to rezone the land in question in this Fair

10

Housing Act case).  Therefore, the court finds that the deliberative process and mental process privileges are inapplicable to the information sought by the plaintiff in this case.

Nevertheless, the LCRC argues that the defendants' intent should be determined from objective evidence such as records of public meetings because the Supreme Court has stated that testimony regarding the purpose of an official action "frequently will be barred by privilege." *Village of Arlington Heights v. Metropolitan Housing Development Corporation*, 429 U.S. 252, 268, 97 S.Ct. 555, 565, 50 L.Ed.2d 450 (1977).  But as a practical matter, "frequently" does not mean "always."  More importantly, another case on which the defendants rely to claim privilege specifically notes that a civil rights action is one "extraordinary instance" in which such testimony is appropriate under *Arlington Heights*.  See *North Pacifica*, 274 F.Supp.2d at 1123. Beyond the reasons already stated above, inquiry into unrecorded discussions and motivations is critical in civil rights cases attacking the integrity of a decision because

> [m]unicipal officials acting in their official capacities seldom, if ever, announce on the record that they are pursuing a particular course of action because of their desire to discriminate against a racial minority. . . .  It is only in private conversation, with individuals assumed to share their bigotry, that open statements of discrimination are made, so it is rare that these statements can be captured for purposes of proving racial discrimination. . . .
>
> *Smith v. Town of Clarkton*, 682 F.2d 1055, 1064 (4th Cir. 1982)

11

*See also* **Dailey v. City of Lawton**, 425 F.2d 1037, 1039 (10th Cir. 1970). Consistent with the great weight of authority finding discovery into the decisionmakers' motivations appropriate in civil rights cases, the court declines to read **Arlington Heights** as an absolute ban on discovery.[2]

Next, the defendants argue that the plaintiff has not presented sufficient evidence to establish that the defendants had improper motivations. **Alexander** articulated the rule that a party must produce "some evidence" of misconduct. *See* 186 F.R.D. at 165. In finding the evidentiary burden met, the **Alexander** court found that a statement which omitted the name of a person who requested a security file, made in response to an interrogatory requesting the names of such individuals, was circumstantial evidence of improper motive when the person whose name was omitted testified that he was the person responsible for requesting the file. 186 F.R.D. at 164-65. The court noted that this information did not need to *prove* an improper motive, but merely be "some evidence," which, if proven, could be circumstantial evidence of motive in the plaintiff's case. **Alexander**, 186 F.R.D. at 165.

---

[2] Although the **North Pacifica** court declined to permit discovery into the "City Council members' subjective uncommunicated thoughts," **North Pacifica** is decidedly in the minority in this result. 274 F.Supp.2d at 1125. Moreover, the court allowed inquiry into objective manifestations of the council members' motive and intent, such as what the council members said to each other, heard, read, or were told regarding the zoning condition disputed in the case. *See* **North Pacifica**, 274 F.Supp.2d at 1125-26. Here, the defendants seek to block all inquiry off the written record, including inquiry into off-the-record discussions between Commissioners, which far exceeds the resolution crafted by the **North Pacifica** court.

12

Here, the plaintiff states that Commissioner Gerry Scheub opposed the housing development initiated by Hucker and that Hucker took actions which led to the United States' discrimination suit against the City of Lake Station.  Scheub then wrote to Hucker directing him not to cooperate with the Department of Justice.  Subsequently, Scheub replaced Clay on the Redevelopment Commission Board, and Hucker and McInturf, who was an ally of Hucker, were terminated as employees.  The court finds that this sequence of events, and the letter from Scheub to Hucker, satisfies the evidentiary burden to compel the discovery requested by the plaintiff.

Finally, the LCRC argues that the Commissioners share absolute immunity from discovery into their motives because they are legislators.  However, all of the cases cited by the LCRC for this proposition specifically limit immunity to legislative decisions.  *See, e.g.,* **Supreme Court of Virginia v. Consumers Union**, 446 U.S. 719, 731, 100 S.Ct. 1967, 1974, 64 L.Ed.2d 641 (1980); **Eastland v. United States Servicemen's Fund**, 421 U.S. 491, 503, 95 S.Ct. 1813, 1821, 44 L.Ed.2d 324 (1975); **Morris v. Lindau**, 196 F.3d 102, 110-11 (2nd Cir. 1999).  The plaintiff notes that the Commissioners are executive officers rather than legislators.  In any event, this case relates to personnel decision, which is not legislative in nature.  Accordingly, the cases cited by the LCRC are inapplicable.

_____

For the foregoing reasons, the Motion to Compel Testimony filed by the plaintiff, the United States of America, on August 25, 2005 is **DENIED AS MOOT**, and the Motion to Compel Testimony filed by the United States on August 30, 2005 is **GRANTED.**

ENTERED this 21st day of November, 2005

                                              s/ ANDREW P. RODOVICH
                                                 United States Magistrate Judge